# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

BRENDA L. RAPOSA, Individually and As    :
Administratrix of the Estate of Craig James Raposa, :
     Plaintiff,                         :
                                   :
     vs.                               :    C.A. No. 14-298-M-LDA
                                   :
NICHOLAS J. ARRUDA, Individually and in his  :
Official capacity as an officer of the Town of    :
Portsmouth Police Department, GARRETT      :
COYNE, Individually and his official capacity as  :
An officer of the Town of Portsmouth,       :
STEVEN C. COFIELD, Individually and in his   :
Capacity as an officer of the Town of Portsmouth, :
LANCE E. HEBERT, Individually and in his    :
official capacity as Chief of the Portsmouth Police :
Department, STEVEN L. LYNCH, Individually   :
and in his official capacity as a Fire Lieutenant   :
for the Town of Portsmouth,  ANDREW L.      :
WHITE, Individually and in his official capacity as :
a Firefighter and Emergency Medical Technician  :
for the Town of Portsmouth, MICHAEL M.    :
CRANSON, Individually and in his official     :
capacity as Chief of the Portsmouth Fire      :
Department, the TOWN OF PORTSMOUTH, by   :
and through its Treasurer, DAVID FAUCHER,   :
JOHN AND JANE DOES 1-10, Individually and in :
their capacities as employees of the Town of    :
Portsmouth,                            :
     Defendants.                      :

## FIRST AMENDED COMPLAINT

## I.  INTRODUCTION

1.  On February 3, 2012, Craig James Raposa ("Mr. Raposa"), a twenty-five year old, with a history of mental illness, was outside his mother's home when he was restrained and held face down on the ground by the Portsmouth Police Department and Portsmouth Fire Department causing his death.

2.  This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983

and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, §§ 2, 5, 6, and 14 of the Rhode Island Constitution, Rhode Island General Laws § 10-7-1, et seq., and under the common law of the State of Rhode Island, against Nicholas J. Arruda, Garrett Coyne, and Steven C. Cofield, Steven L. Lynch, Andrew L. White, police officers and firefighters/emergency medical technicians ("EMTs") of the Town of Portsmouth, in their individual and official capacities and against the Town of Portsmouth. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims under state law.

3.     The individual police officer and firefighter/EMT defendants made an unreasonable seizure of the person of Craig James Raposa, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that these defendants assaulted and battered Craig James Raposa ultimately causing his death. These violations and torts were committed as a result of policies and customs of the Town of Portsmouth.

## II.     PARTIES

4.     Plaintiff Brenda L. Raposa ("Ms. Raposa") is a resident of Middletown, Rhode Island and is the mother of decedent Craig James Raposa ("Mr. Raposa").

5.     Ms. Raposa is the court-appointed Administratrix of the Estate of Craig James Raposa ("the Estate"), deceased on February 3, 2012. The Estate brings this action pursuant to the provisions of the Rhode Island General Laws § 10-7-1, et seq.

6.     Defendant Police Officer Nicholas J. Arruda ("Arruda"), upon information and belief, is a citizen and resident of the Town of Tiverton, State of Rhode Island and of the United States. Arruda, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed and acting police officer employed by the

Town of Portsmouth. Arruda participated in the excessive force and physical brutality against Mr. Raposa, including but not limited to restraining and holding Mr. Raposa face down on the ground, which led to Mr. Raposa's injuries and ultimate death. It was Arruda's acts or omissions that escalated or failed to mitigate the situation that led to Mr. Raposa's severe injuries and death. Arruda's exertion of brute force and power constitutes an egregious violation of Mr. Raposa's civil rights. Arruda showed flagrant disregard for Mr. Raposa's civil rights, as they emanate from state and federal law and was otherwise negligent.

7. Defendant Police Officer Garrett Coyne ("Coyne"), upon information and belief, is a citizen and resident of the Town of Middletown, State of Rhode Island and of the United States. Coyne, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed and acting police officer employed by the Town of Portsmouth. Coyne participated in the excessive force and physical brutality against Mr. Raposa, including but not limited to restraining and holding Mr. Raposa face down on the ground, which led to Mr. Raposa's injuries and ultimate death. It was Coyne's acts or omissions that escalated or failed to mitigate the situation that led to Mr. Raposa's severe injuries and death. Coyne's exertion of brute force and power constitutes an egregious violation of Mr. Raposa's civil rights. Coyne showed flagrant disregard for Mr. Raposa's civil rights, as they emanate from state and federal law and was otherwise negligent.

8. Defendant Police Officer Steven C. Cofield ("Cofield"), upon information and belief, is a citizen and resident of the Town of Portsmouth, State of Rhode Island and of the United States. Cofield, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed and acting police officer employed by the Town of Portsmouth. Cofield participated in the excessive force and physical brutality

against Mr. Raposa, including but not limited to restraining and holding Mr. Raposa face down on the ground, which led to Mr. Raposa's injuries and ultimate death. It was Cofield's acts or omissions that escalated or failed to mitigate the situation that led to Mr. Raposa's severe injuries and death. Cofield's exertion of brute force and power constitutes an egregious violation of Mr. Raposa's civil rights. Cofield showed flagrant disregard for Mr. Raposa's civil rights, as they emanate from state and federal law and was otherwise negligent.

9.      Defendant Police Chief Lance E. Hebert ("Hebert"), Ret., upon information and belief, is a citizen and resident of the Town of Portsmouth, State of Rhode Island and of the United States. Hebert, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed and acting Chief of Police employed by the Town of Portsmouth. Upon information and belief, Hebert was the presiding officer over Defendants Arruda, Coyne and Cofield at all relevant times. Upon information and belief, as the commanding officer and the supervising authority of Defendants Arruda, Coyne and Cofield, Hebert was responsible for the hiring, screening, training, supervision, and conduct of Defendants Arruda, Coyne and Cofield.

10.     Defendant Fire Department Captain Steven L. Lynch ("Lynch"), upon information and belief, is a citizen and resident of the Town of Bristol, State of Rhode Island and of the United States. Lynch, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed Captain and acting firefighter and EMT employed by the Town of Portsmouth. Lynch participated in the excessive force and physical brutality against Mr. Raposa, including but not limited to restraining and holding Mr. Raposa face down on the ground, which led to Mr. Raposa's injuries and ultimate death. It was Lynch's acts or omissions that escalated or failed to mitigate the situation that led to Mr.

Raposa's severe injuries and death. Lynch's exertion of brute force and power constitutes an egregious violation of Mr. Raposa's civil rights. Lynch showed flagrant disregard for Mr. Raposa's civil rights, as they emanate from state and federal law and was otherwise negligent.

11.     Defendant Firefighter and EMT Andrew L. White ("White"), upon information and belief, is a citizen and resident of the Town of Bristol, State of Rhode Island and of the United States. White, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed and acting firefighter and EMT employed by the Town of Portsmouth. White participated in the excessive force and physical brutality against Mr. Raposa, including but not limited to restraining and holding Mr. Raposa face down on the ground, which led to Mr. Raposa's injuries and ultimate death. It was White's acts or omissions that escalated or failed to mitigate the situation that led to Mr. Raposa's severe injuries and death. White's exertion of brute force and power constitutes an egregious violation of Mr. Raposa's civil rights. White showed flagrant disregard for Mr. Raposa's civil rights, as they emanate from state and federal law and was otherwise negligent.

12.     Defendant Fire Chief Michael M. Cranson ("Cranson"), upon information and belief, is a citizen and resident of the Town of Portsmouth, State of Rhode Island and of the United States. Cranson, who is being sued herein individually and in his official capacity, has been at all times relevant to this complaint, a duly appointed and acting Chief of the Fire Department employed by the Town of Portsmouth. Upon information and belief, at all times relevant herein, Cranson was the Fire Chief presiding over Defendants Lynch and White. Upon information and belief, as the supervising authority of Defendants Lynch and White, Cranson was responsible for the hiring, screening, training, supervision, and conduct of Defendants Lynch and White.

13.     Defendant Town of Portsmouth, Rhode Island, is a municipal corporation organized and existing under the laws of the State of Rhode Island.

14.     Defendant David Faucher ("Faucher") is herein being sued in his representative capacity pursuant to R.I. Gen. Laws § 45-15-5, as current Treasurer of the Town of Portsmouth and should another individual occupy that position, this suit shall continue against said individual in his/her representative capacity.

15.     Defendants John and Jane Does 1-10 were, at all relevant times, police officers, firefighters, EMTs, or non-uniformed employees of the Town of Portsmouth whose names and identities are unknown to the Estate at this time who were responsible for the hiring, screening, training, supervision, and conduct of Defendants Arruda, Coyne, Cofield, Lynch, and White or were otherwise involved in the unlawful acts described herein.

16.     At all relevant times, Defendants Arruda, Coyne, Cofield, Hebert, Lynch, White, Cranson and John and Jane Does 1-10 were acting within the scope of their employment with the Town of Portsmouth, Rhode Island.

### III. JURISDICTION & VENUE

17.     Jurisdiction of this Honorable Court is proper pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. §§ 1983, 1988.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred within the judicial district of Rhode Island.

### IV. FACTS

19.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

20.     Mr. Raposa had a history of mental illness, such that he previously received in-patient psychiatric treatment.

21.     On February 3, 2012, Mr. Raposa went to his grandmother, Lucette Pimental's ("Ms. Pimental") home.

22.     Upon information and belief, Ms. Raposa spoke with Ms. Pimental who stated that Mr. Raposa was up all night, was complaining of leg and back pain, and drank coffee.

23.     Upon information and belief, Ms. Raposa also spoke with Mr. Raposa's case manager at Riverwood Mental Health, who also verified that Mr. Raposa did not sleep the night before.

24.     On February 3, 2012, at approximately 11:15 a.m., Mr. Raposa arrived at Ms. Raposa's residence located at Bay View Estate, Garden Building, 100 Almeida Terrace, Portsmouth, Rhode Island.

25.     Mr. Raposa rang Ms. Raposa's doorbell.

26.     Ms. Raposa did not answer the door.

27.     Mr. Raposa called 9-1-1 out of concern for his mother.

28.     Rescue personnel, namely Lynch and White, responded to Ms. Raposa's residence for a "well being check" at approximately 11:30 a.m.

29.     Ms. Raposa told the rescue personnel that she was alright.

30.     Ms. Raposa also told the rescue personnel that Mr. Raposa had a mental health condition.

31.     Mr. Raposa walked with rescue personnel toward the rescue truck.

32.     At that time, Officer Arruda responded to Ms. Raposa's residence for a "well being check" and parked his cruiser near the ambulance.

33.     White approached Officer Arruda and informed Arruda that the call was no longer to check the well being of a female and that Mr. Raposa had a mental condition.

34.     Arruda, Lynch, and White attempted to convince Mr. Raposa to voluntarily submit to seek medical attention from a mental health professional.

35.     Mr. Raposa declined treatment and stated that he did not want to go to the hospital.

36.     Mr. Raposa had not committed any crimes nor was he accused of having committed any crimes.

37.     At no time did Mr. Raposa display any behavior that would cause a reasonable person to believe he presented a danger to himself or to other members of the community.

38.     Officer Arruda told Mr. Raposa that if he refused to go with the firefighters in the rescue to the hospital, Mr. Raposa would be forced to go.

39.     Officer Arruda took out his handcuffs and requested Mr. Raposa turn around so that he could cuff him.

40.     Mr. Raposa refused to be cuffed and walked towards his car, which was parked in the Almeida Terrace parking lot.

41.     As Mr. Raposa opened the car door, Officer Arruda pepper sprayed Mr. Raposa in the face in order to subdue Mr. Raposa as he attempted to gain entry of his vehicle.

42.     Upon information and belief, Ms. Raposa heard Mr. Raposa scream, "I can't see, I can't see."

43.     Officer Arruda proceeded to grab Mr. Raposa by the back of the collar of his shirts with both hands and began to pull him away from his vehicle.

44.     Officer Arruda pulled Mr. Raposa's shirt over his left arm and partially over his

head.

45. Officer Arruda pulled Mr. Raposa away from his vehicle and onto the ground so that Mr. Raposa was face down on his stomach.

46. Officer Arruda mounted Mr. Raposa and put his knee on Mr. Raposa's right shoulder next to Mr. Raposa's head and held Mr. Raposa's right arm behind his back.

47. Officer Arruda placed one cuff on Mr. Raposa's right wrist.

48. Firefighters Lynch and White assisted in holding Mr. Raposa down.

49. A nearby U.S. Postal employee, Claude D. Goulet also assisted in holding Mr. Raposa down.

50. Ms. Raposa ran out of her apartment to where Mr. Raposa was been held down.

51. Ms. Raposa held Mr. Raposa's head so that it would not be injured as he was being restrained.

52. Officer Coyne and Lieutenant Cofield also arrived on scene and assisted in restraining and holding down Mr. Raposa on his stomach.

53. The officers told Ms. Raposa to move away from the area and she did.

54. Mr. Raposa defecated and continued to struggle and thrash.

55. Mr. Raposa was blowing bubbles of blood and mucus.

56. Mr. Raposa stopped moving.

57. Firefighter Michael D. Pinksaw attempted to obtain a pulse from Mr. Raposa, but was unable to detect a pulse.

58. Mr. Raposa turned blue in the face and he was transported by rescue to Newport Hospital.

59. Mr. Raposa suffered cardiac asphyxia and was pronounced dead at Newport

Hospital at 12:45 p.m.

## V.  <u>NOTICE OF CLAIM</u>

60.     Prior to institution of the within action against the Town of Portsmouth, the Estate complied with R.I. Gen. Laws § 45-15-5 and more than forty (40) days have elapsed since the Estate made presentment of the claim to the Town of Portsmouth without receiving just and due compensation from the said town.

## VI.  <u>COUNT 1: 42 U.S.C. § 1983</u>
<u>Against Defendants Arruda, Coyne, Cofield, Lynch, and White</u>

61.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

62.     At all times relevant herein, Defendants Arruda, Coyne, Cofield, Lynch, and White were acting under color of law by exercising power made possible because these defendants were clothed with the authority of law.

63.     The actions of Defendants Arruda, Coyne, Cofield, Lynch, and White in using unreasonable force against Mr. Raposa violated Mr. Raposa's rights under the Fourth and Fourteenth Amendments to the United States Constitution and displayed both deliberate indifference and reckless disregard of Mr. Raposa's constitutional rights.

64.     The actions of Defendants Arruda, Coyne, Cofield, Lynch, and White in restraining and holding Mr. Raposa face down on his stomach until he became unconscious, stopped breathing, suffered cardiac asphyxia and died, were neither necessary nor just, constitute unreasonable force in the seizure of Mr. Raposa's person, and thus, deprived Mr. Raposa of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

65.     The Estate claims damages for the injuries set forth under 42 U.S.C. § 1983 against Defendants Arruda, Coyne, Cofield, Lynch, and White for violation of Mr. Raposa's

constitutional rights under color of law.

66.     Defendants Arruda, Coyne, Cofield, Lynch, and White's use of deadly force against Mr. Raposa was not reasonable, but rather, constituted excessive force and physical brutality in derogation of rights secured to Mr. Raposa by the Fourth and Fourteenth Amendments to the United States Constitution.

67.     As a direct and proximate result of the actions by Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa's Estate incurred medical bills and pain and suffering and has been otherwise damaged in violation of 42 U.S.C. § 1983.

68.     As a direct and proximate result of the actions by Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to 42 U. S. C. § 1983.

## VII.     COUNT 2: 42 U.S.C. § 1983
## Against Defendants Hebert, Cranson and John and/or Jane Doe(s)

69.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

70.     At all times relevant herein, Defendants Arruda, Coyne, Cofield, Lynch, and White were acting under color of law by exercising power made possible because they were clothed with the authority of law.

71.     By reason of the foregoing, Defendants Hebert, Cranson and John and/or Jane Doe(s), supervisory personnel of Defendants Arruda, Coyne, Cofield, Lynch, and White, acted with reckless disregard and deliberate indifference in hiring, screening and training of

Defendants Arruda, Coyne, Cofield, Lynch, and White.

72.     The failure of Defendants Hebert, Cranson and John and/or Jane Doe(s) to provide adequate training, education and discipline to Defendants Arruda, Coyne, Cofield, Lynch, and White resulted in the denial of Mr. Raposa's rights, protected by the Fourth and Fourteenth Amendments to the United States Constitution.

73.     As a direct and proximate result of the actions and/or omissions of Defendants Hebert, Cranson and John and/or Jane Doe(s), Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa's Estate incurred medical bills and pain and suffering and has been otherwise damaged in violation of 42 U.S.C. § 1983.

### VIII.   COUNT 3: Assault
### Against Defendants Arruda, Coyne, Cofield, Lynch, and White
### (Survival Type Damages)

74.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

75.     Defendants Arruda, Coyne, Cofield, Lynch, and White apprehended, restrained, and used unreasonable force upon Mr. Raposa, causing Mr. Raposa to suffer apprehension of an immediate harmful contact.

76.     Defendants Arruda, Coyne, Cofield, Lynch, and White's negligent, reckless, and egregious conduct indicates a flagrant disregard for Mr. Raposa's health and safety.

77.     As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa's Estate incurred medical bills and pain and suffering and has been

otherwise damaged.

78.    As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### IX. COUNT 4: Assault
### Against Defendants Arruda, Coyne, Cofield, Lynch, and White
### (Wrongful Death & Loss of Society and Companionship Damages)

79.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

80.    By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

81.    By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

### X. COUNT 5: Battery
### Against Defendants Arruda, Coyne, Cofield, Lynch, and White
### (Survival Type Damages)

82.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

83.    Defendants Arruda, Coyne, Cofield, Lynch, and White attacked, restrained, and used unreasonable force upon Mr. Raposa.

84.    Defendants Arruda, Coyne, Cofield, Lynch, and White restrained and held Mr. Raposa face down on his stomach until he became unconscious, stopped breathing, suffered cardiac asphyxia and died.

85.    The acts of Defendants Arruda, Coyne, Cofield, Lynch, and White were done

without Mr. Raposa's consent.

86.     As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa incurred medical bills and pain and suffering and has been otherwise damaged.

87.     As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

**XI.  COUNT 6: Battery**
**Against Defendants Arruda, Coyne, Cofield, Lynch, and White**
**(Wrongful Death & Loss of Society and Companionship Damages)**

88.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

89.     By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

90.     By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

**XII.   COUNT 7: False Imprisonment**
**Against Defendants Arruda, Coyne, Cofield, Lynch, and White**
**(Survival Type Damages)**

91.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

92.     Defendants Arruda, Coyne, Cofield, Lynch, and White restrained and used

unreasonable force upon Mr. Raposa while cloaked with the authority of the Portsmouth Police Department and Portsmouth Fire Department, and ruthlessly pursued Mr. Raposa without a reasonable basis for doing so.

93.     Defendants Arruda, Coyne, Cofield, Lynch, and White lacked a reasonable basis for apprehending Mr. Raposa and, thus, the Defendants' ruthless pursuit and restraint of Mr. Raposa was an unfounded assertion of authority.

94.     Defendants Arruda, Coyne, Cofield, Lynch, and White jointly and severally intended to confine Mr. Raposa and Mr. Raposa was conscious of this confinement and the confinement was not privileged.

95.     Defendants Arruda, Coyne, Cofield, Lynch, and White unlawfully restrained Mr. Raposa.

96.     As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa's Estate incurred medical bills and pain and suffering and has been otherwise damaged.

97.     As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### XIII.   COUNT 8: False Imprisonment
### Against Defendants Arruda, Coyne, Cofield, Lynch, and White
### (Wrongful Death & Loss of Society and Companionship Damages)

98.     The preceding paragraphs are incorporated by reference as if set forth fully

herein.

99.     By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

100.     By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

## XIV.   COUNT 9: Intentional Infliction of Emotional Distress
## Against Defendants Arruda, Coyne, Cofield, Lynch, and White
## (Survival Type Damages)

101.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

102.     Defendants Arruda, Coyne, Cofield, Lynch, and White intentionally and/or recklessly restrained and held Mr. Raposa to the ground on his stomach with his arms held behind his back causing fatal injuries.

103.     The Defendants Arruda, Coyne, Cofield, Lynch, and White's conduct was outrageous and egregious.

104.     There is a causal connection between the Defendants Arruda, Coyne, Cofield, Lynch, and White's conduct and the emotional distress suffered by Mr. Raposa.

105.     As a direct and proximate result of the intentional infliction of emotional distress by Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered serious mental anguish.

106.     As a direct and proximate result of the actions and/or omissions of Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered emotional distress as he died outside his mother's apartment on February 3, 2012.

107.     Accordingly, Mr. Raposa's Estate seeks monetary damages therefore pursuant to

Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### XV.     COUNT 10: Intentional Infliction of Emotional Distress
### Against Defendants Arruda, Coyne, Cofield, Lynch, and White
### (Wrongful Death & Loss of Society and Companionship Damages)

108.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

109.     By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

110.     By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

### XVI.     COUNT 11: 42 U.S.C. § 1983
### Against the Town of Portsmouth

111.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

112.     Defendant Town of Portsmouth developed and maintained customs, policies, and/or practices exhibiting deliberate indifference to the constitutional rights of its citizens which caused the violations of Mr. Raposa's rights.

113.     It was the custom, policy, and/or practice of the Town of Portsmouth to provide no training or grossly inadequate training to its police officers regarding the following: their duties, responsibilities, and conduct towards mentally ill and mentally handicapped individuals; use of force; preventing abuse of authority; communicating with the mentally ill; tactics for approaching and otherwise de-escalating situations with the mentally ill; and properly restraining individuals with and without mental illness.

114.     It was the policy and/or custom or practice of the Town of Portsmouth to conduct grossly inadequate screening in the hiring of its police officers regarding the officers'

propensities for violence, abuse of authority and bias towards those with disabilities, including the mentally ill.

115. The Town of Portsmouth has been deliberately indifferent in training, supervising, and disciplining police officers regarding their duties, responsibilities, and conduct toward mentally ill and mentally handicapped individuals; use of force; preventing abuse of authority; communicating with the mentally ill; tactics for approaching and otherwise de-escalating situations with the mentally ill; and properly restraining individuals with and without mental illness.

116. The Town of Portsmouth has been deliberately indifferent in screening and hiring police officers who demonstrate propensities for violence, abuse of authority and bias towards those with disabilities, including the mentally ill.

117. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the Town of Portsmouth to the constitutional rights of persons within the Town, and were the cause of the violations of Mr. Raposa's rights alleged herein.

118. As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies and deliberate indifference on the part of the Town of Portsmouth, Mr. Raposa was deprived of his constitutional rights, suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012.

119. As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies and deliberate indifference on the part of the Town of Portsmouth, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to 42 U.S.C. § 1983.

### XVII.  COUNT 12: Violations of Art. I §§ 2, 6, and 14 of the R.I. Constitution Against Defendants Arruda, Coyne, Cofield, Lynch, and White

**(Survival Type Damages)**

120.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

121.     The actions of Defendants Arruda, Coyne, Cofield, Lynch, and White in apprehending, restraining and holding Mr. Raposa on the ground on his stomach with his arms held behind his back causing fatal injuries, were without just cause and in violation of Mr. Raposa's rights under Article I, §§ 2, 6, and 14 of the Rhode Island Constitution.

122.     The actions of Defendants Arruda, Coyne, Cofield, Lynch, and White in restraining and holding Mr. Raposa face down on his stomach until he became unconscious, stopped breathing, suffered cardiac asphyxia and died, were neither necessary nor just, and constitute unreasonable force in the seizure of Mr. Raposa's person, and thus, deprived Mr. Raposa of his rights under Article I, §§ 2, 6, and 14 of the Rhode Island Constitution.

123.     Defendants Arruda, Coyne, Cofield, Lynch, and White's conduct in restraining and holding Mr. Raposa face down on his stomach until he became unconscious, stopped breathing, suffered cardiac asphyxia and died was not reasonable, but rather, constitutes excessive force and physical brutality; as such, this violent and capricious exertion of power violated Mr. Raposa's rights under Article I, §§ 2, 6, and 14 of the Rhode Island Constitution.

124.     As a direct and proximate result of the actions by Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012.

125.     As a direct and proximate result of the actions by Defendants Arruda, Coyne, Cofield, Lynch, and White, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to

Article I § 5 of the Rhode Island Constitution and Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### XVIII. COUNT 13: Violations of Art. I §§ 2, 6, and 14 of the R.I. Constitution
### Against Defendants Arruda, Coyne, Cofield, Lynch, and White
### (Wrongful Death & Loss of Society and Companionship Damages)

126.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

127.    By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

128.    By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

### XIX. COUNT 14: Violations of Art. I § 2 of the R.I. Constitution
### Against the Town of Portsmouth
### (Survival Type Damages)

129.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

130.    Defendant Town of Portsmouth developed and maintained customs, policies, and/or practices exhibiting deliberate indifference to whether mentally ill individuals could avail themselves of equal protection of the laws under Article I § 2 of the Rhode Island Constitution.

131.    The Town of Portsmouth knew or should have known that the failure to generate preventive procedures or train officers in dealing with the mentally ill would have a disparate impact on the mentally ill in violation of Article I § 2 of the Rhode Island Constitution.

132.    The Town of Portsmouth failed to establish policies and training procedures for the Portsmouth Police Department that addressed the protection, safety, and happiness of the mentally ill in violation of Article I § 2 of the Rhode Island Constitution.

133.    The Town of Portsmouth had deficient policies that were not conductive to the protection, safety, and happiness of the mentally ill, but rather, created a situation where the police officers were fundamentally ill-prepared for responding to mental illness; as such, Mr. Raposa became a casualty of this ill-conceived policy in violation of Article I § 2 of the Rhode Island Constitution.

134.    As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies and deliberate indifference on the part of the Town of Portsmouth, Mr. Raposa was deprived of his rights under Article I § 2 of the Rhode Island Constitution, suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012.

135.    As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies and deliberate indifference on the part of the Town of Portsmouth, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to Article I § 5 of the Rhode Island Constitution and Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### XX.    COUNT 15: Violations of Art. I § 2 of the R.I. Constitution<br>Against the Town of Portsmouth<br>(Wrongful Death & Loss of Society and Companionship Damages)

136.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

137.    By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

138.    By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

### XXI.   COUNT 16: Discrimination Based on Disability
### Title II of the Americans with Disabilities Act
### Against the Town of Portsmouth, Hebert, Cranson and John and/or Jane Doe(s)

139.   The preceding paragraphs are incorporated by reference as if set forth fully herein.

140.   Mr. Raposa was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2) because he had a history of mental illness that substantially limited one or major life activities.

141.   Mr. Raposa had a history of mental illness such that he previously received in-patient psychiatric treatment, and at all relevant times herein, Mr. Raposa was receiving out-patient psychiatric treatment.

142.   The Americans with Disabilities Act ("ADA") requires the Town of Portsmouth to adopt policies and procedures for dealing with mentally ill persons and a failure to train police officers to peacefully deal with mentally ill persons is a violation of 42 U.S.C. § 12132.

143.   Upon arriving at the Ms. Raposa's home, Defendants Lynch and White received information that Mr. Raposa was mentally ill and having a manic episode.

144.   Upon arriving at the scene, Defendant Lynch made Defendant Arruda aware of Mr. Raposa's condition.

145.   The Town of Portsmouth, Hebert, Cranson, and John and/or Jane Doe(s) failed to adopt policies and procedures for dealing with mentally ill persons, such as Mr. Raposa.

146.   Defendants' failure to train police officers and firefighters/EMTs to peacefully deal with mentally ill persons resulted in Arruda, Coyne, Cofield, Lynch, and White apprehending, restraining and holding Mr. Raposa on the ground on his stomach with his arms held behind his back until he was unconscious, not breathing and suffered cardiac asphyxia and

died, in violation of 42 U.S.C. § 12132.

147. As a direct and proximate result of the Defendants' discrimination and non-compliance with Title II of the ADA, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa incurred medical bills and pain and suffering and has been otherwise damaged.

148. As a direct and proximate result of the Defendants' discrimination and non-compliance with Title II of the ADA, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to 42 U.S.C. § 12133.

## XXII.  COUNT 17: Discrimination Based on Disability
### Title II of the Americans with Disabilities Act
### Against Arruda, Coyne, Cofield, Lynch, and White

149. The preceding paragraphs are incorporated by reference as if set forth fully herein.

150. Mr. Raposa was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2) because he had a history of mental illness that substantially limited one or major life activities.

151. Mr. Raposa had a history of mental illness such that he previously received in-patient psychiatric treatment, and at all relevant times herein, Mr. Raposa was receiving out-patient psychiatric treatment.

152. The ADA regulations require that no qualified individual with a disability be discriminated against on account of his disability and Defendants Arruda, Coyne, Cofield, Lynch, and White's wrongful seizure of Mr. Raposa is a violation of 42 U.S.C. §§ 12132.

153. Upon arriving at the Ms. Raposa's home, Defendants Lynch and White received

23

information that Mr. Raposa was mentally ill and having a manic episode.

154.     Upon arriving at the scene, Defendant Lynch made Defendant Arruda aware of Mr. Raposa's condition.

155.     Defendants Arruda, Coyne, Cofield, Lynch, and White's conduct of restraining and holding Mr. Raposa on the ground on his stomach with his arms held behind his back until he was unconscious, not breathing and suffered cardiac asphyxia and died, was due to their prejudice and misperception of Mr. Raposa's mental disability.

156.     Defendants Arruda, Coyne, Cofield, Lynch, and White's prejudice and misperception of a mentally ill person resulted in their conduct in violation of 42 U.S.C. §§ 12132.

157.     As a direct and proximate result of the Defendants' discrimination and non-compliance with Title II of the Americans with Disabilities Act, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa incurred medical bills and pain and suffering and has been otherwise damaged.

158.     As a direct and proximate result of the Defendants' discrimination and non-compliance with Title II of the Americans with Disabilities Act, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to 42 U.S.C. § 12133.

### XXIII. COUNT 18: Medical Negligence
### Against Defendant Lynch
### (Survival Type Damages)

159.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

160. Beginning on or about February 3, 2012, Defendant Lynch undertook for valuable consideration to provide health care and treatment to Mr. Raposa.

161. It then and there became and was the duty of Defendant Lynch to exercise the degree of care and skill that was expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances.

162. Nevertheless, Defendant Lynch failed to exercise the requisite degree of care and skill in his provision of health care and treatment to Mr. Raposa, thereby causing him to suffer and become afflicted with severe personal injuries and extreme pain and suffering.

163. As a direct and proximate result of the actions by Defendant Lynch, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012.

164. As a direct and proximate result of the negligence of Defendant Lynch, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

## XXIV. COUNT 19: Medical Negligence
### Against Defendant Lynch
### (Wrongful Death & Loss of Society and Companionship Damages)

165. The preceding paragraphs are incorporated by reference as if set forth fully herein.

166. By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

167. By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

### XXV. COUNT 20: Medical Negligence
### Against Defendant White
### (Survival Type Damages)

168.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

169.    Beginning on or about February 3, 2012, Defendant White undertook for valuable consideration to provide health care and treatment to Mr. Raposa.

170.    It then and there became and was the duty of Defendant White to exercise the degree of care and skill that was expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances.

171.    Nevertheless, Defendant White failed to exercise the requisite degree of care and skill in his provision of health care and treatment to Mr. Raposa, thereby causing him to suffer and become afflicted with severe personal injuries and extreme pain and suffering.

172.    As a direct and proximate result of the actions by Defendant White, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012.

173.    As a direct and proximate result of the negligence of Defendant White, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### XXVI. COUNT 21: Medical Negligence
### Against Defendant White
### (Wrongful Death & Loss of Society and Companionship Damages)

174.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

175. By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

176. By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

## XXVII.    COUNT 22: Vicarious Liability
## Against the Town of Portsmouth
## (Survival Type Damages)

177. The preceding paragraphs are incorporated by reference as if set forth fully herein.

178. At all relevant times, Arruda, Coyne, Cofield, Lynch, White, Hebert, Carson, John and Jane Doe(s) were employees and/or agents of the Town of Portsmouth and were acting within the course and scope of their employment and agency.

179. As a direct and proximate result of the Defendants Arruda, Coyne, Cofield, Lynch, White, Hebert, Carson, John and Jane Doe(s) negligence or gross negligence, reckless disregard, and heedless indifference as aforementioned, Mr. Raposa suffered severe personal injuries, extreme pain and suffering, incredible emotional distress, and ultimately died on February 3, 2012; moreover, Mr. Raposa incurred medical bills and pain and suffering, and has been otherwise damaged.

180. As a direct and proximate cause of Defendants Arruda, Coyne, Cofield, Lynch, White, Hebert, Carson, John and Jane Doe(s) negligence or gross negligence, reckless disregard, and heedless indifference as aforementioned, Mr. Raposa endured conscious pain and suffering and incurred medical expenses prior to his death, and his Estate seeks monetary damages therefore pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12133, Article I § 5 of the Rhode Island Constitution, and Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1.

### XXVIII.   COUNT 23: Vicarious Liability
### Against the Town of Portsmouth
### (Wrongful Death & Loss of Society and Companionship Damages)

181. The preceding paragraphs are incorporated by reference as if set forth fully herein.

182. By reason of the death of Mr. Raposa, his legal beneficiaries have suffered damages as set forth in Rhode Island General Laws §§ 10-7-1.1 and 10-7-2.

183. By reason of the death of Mr. Raposa, his mother, Mrs. Raposa has suffered a loss of society and companionship as set forth in Rhode Island General Laws §§ 10-7-1.2(c).

### XXIX. PRAYER FOR RELIEF

**WHEREFORE**, Brenda L. Raposa, Individually and As Administratrix of the Estate of Craig James Raposa prays that a judgment for the following relief be entered in her favor and against Defendants:

a. all reasonable compensatory damages pursuant to Rhode Island General Laws § 10-7-1, et seq., including for medical bills, mental anguish and emotional distress, pain and suffering;

b. damages pursuant to Rhode Island General Laws §§ 10-7-5, 10-7-7, and 10-7-7.1;

c. damages pursuant to Rhode Island General Laws §§ 10-7-1.1, and 10-7-2;

d. damages pursuant to Rhode Island General Laws § 10-7-1.2(c);

e. punitive damages;

f. reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and for the prosecution of the Estate's 42 U.S.C. § 1983 claims;

g. reasonable attorney's fees and court costs pursuant to federal and state law;

h. legal interest; and

i.  such other and further relief as this Honorable Court deems right and just.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Plaintiff BRENDA L. RAPOSA, As Administratrix
Of the Estate of Craig James Raposa,
By her Attorneys,

/s/ Gil A. Bianchi, Jr.
Gil A. Bianchi, Jr., Esq. #6421
Erica M. O'Connell, Esq. #7976
Bianchi & Brouillard, P.C.
56 Pine Street, Suite 250
Providence, RI 02903
Telephone: (401) 223-2990
Facsimile: (877) 548-4539
Email: gbianchi@bbrilaw.com
         eoconnell@bbrilaw.com


Thomas G. Briody, Esq. #4427
Law Office of Thomas G. Briody
91 Friendship Street
Providence, RI 02903
Telephone: (401) 751-5151
Facsimile: (401) 421-0876

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 22nd day of January 2015, I filed and served this document through the electronic filing system on the following parties:

Marc DeSisto, Esq.
DESISTO LAW
211 Angell Street
Providence, RI 02906

/s/ Erica M. O'Connell